IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| STARla D. WIGGINS, Individually and as Mother and Next Friend of MAYMIE MITCHELL, a Minor,<br><br>                Plaintiff,<br><br>vs.<br><br>CITY OF LOVINGTON; BOB CARTER, Individually, and as City Manager of the City of Lovington; PAT WISE, Individually, and as City Manager of the City of Lovington; CHARLES KELLEY, Individually and as Assistant Manager of the City of Lovington; and DAIRY FARMERS OF AMERICA, INC., a Corporation,<br><br>                Defendants. | NO. CV 05-375 RB/LAM |

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendants City of Lovington, Bob Carter, Pat Wise and Charles Kelley's [hereinafter "Lovington Defendants"] Motion to Dismiss (Doc. 31). Plaintiffs filed a response and Lovington Defendants filed a reply. Jurisdiction arises under 28 U.S.C. §§ 1331, 1367, 1441 (2002).[1] Having considered the submissions, and being otherwise fully advised,

---

[1]Defendant Dairy Farmers of America, Inc. [hereinafter "Defendant DFA"] timely removed this action from the Fifth District Court, County of Lea, State of New Mexico. (Def. Dairy Farmers of Am.'s Notice of Removal [Doc. 1], filed on Apr. 5, 2005).  Lovington Defendants concurred in the removal.
     Jurisdiction lies pursuant to 28 U.S.C. §§ 1331, 1367 given that Plaintiffs' First Amended Complaint for

1

I hereby deny Lovington Defendants' motion as to Plaintiffs' negligence claims but grant the motion as to all remaining claims, with one exception: Plaintiffs are granted ten days to replead their Comprehensive Environmental Response, Compensation, and Liability Act § 107 claim. *See infra* Part II.C.4.

**I.     Background.**

This case arises chiefly from Plaintiffs' exposure to raw sewage when the City of Lovington's sewer lines "backed up into the [Plaintiffs'] Property" in "July, August, and/or October" 2001. (Compl. ¶¶91-92.) The sewage apparently "c[a]me into contact" with Plaintiffs' residence and its fixtures, as well as Plaintiffs' personal property. (Compl. ¶92.)

According to Plaintiffs, the sewage back-up stemmed from "the blockage of the [City's] sewer lines," which are connected to the City of Lovington's Waste Water Treatment Plant [hereinafter "WWTP"]. (Compl. ¶¶10, 91.) The WWTP system as a whole was apparently "blocked on one or more occasions" in 2001. (Compl. ¶91.) The Complaint stated that Lovington Defendants' negligence, in maintaining and operating the WWTP and its sewer lines, precipitated the 2001 sewage-line failure that produced the sewage back-up at issue here.

Specifically, Plaintiffs maintained that the WWTP had long been "deteriorated and obsolete" and that, although Lovington Defendants were "aware" of this, they failed to "replace and/or update the required equipment" or adequately staff the WWTP. (*See* Compl. ¶¶11-13, 64, 66.) Further, according to Plaintiffs, despite the WWTP infrastructure "continuously" malfunctioning due to "sewer

---

Damages [hereinafter "Complaint"] included: (1) New Mexico state tort claims (Counts I-V, VII-XI : negligence, intentional infliction of emotional distress, infliction of physical injuries and illness, public nuisance, civil conspiracy, ultrahazardous activity, strict liability, negligence per se, and private nuisance); and (2) federal statutory claims (Count VI).

overloads," Lovington Defendants unlawfully allowed "two heavy industries" - namely, Defendant Navajo Refining Company's mining operation and Defendant DFA's dairy - to "tie into the City's sewer system."[2]  (*See* Compl. ¶¶15-16, 69.)

Lovington Defendants' malfeasance, alleged Plaintiffs, caused significant amounts of hazardous waste to be unlawfully discharged into the WWTP and its sewer system, causing the WWTP to "exceed[] acceptable levels for 'nitrate, chloride, and total dissolved solids.'" (Compl. ¶71 (quoting letter from New Mexico Environment Department directed to Defendant Carter).) According to Plaintiffs, the New Mexico Environment Department and the City itself, were concerned that the WWTP was producing hydrogen sulfide gas at levels, "hazard[ous] to [WWTP] operators," which was the source of "intense odors blanketing" the Lovington vicinity. (*See* Compl. ¶¶81-83.). That is, Plaintiffs alleged that because Lovington Defendants permitted improper discharges of hazardous wastes - which were "not susceptible to treatment" - into the Lovington sewer system, the WWTP's "biological processes" were compromised. (Compl. ¶73.)

## II.     Legal Analysis.

Lovington Defendants moved to dismiss all claims asserted against them as stated in Plaintiffs' Complaint. *See* FED. R. CIV. P. 12(b)(6). The Court of Appeals for the Tenth Circuit has made clear that a FED. R. CIV. P. 12(b)(6) motion to dismiss is only appropriate "when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief." *Soc'y of Separationists v. Pleasant Grove City*, 416 F.3d 1239, 1241 (10th Cir. 2005) (quotations omitted). Therein, all "well-pleaded facts, as distinguished from conclusory allegations" must be accepted as

---

[2] All claims against Defendant Navajo Refining L.P. were dismissed with prejudice pursuant to the Court's Order (Doc. 21), filed on June 20, 2005.

3

true and viewed "in the light most favorable to the nonmoving party." *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005) (internal quotation omitted).

### A.     Motion to dismiss Plaintiffs' negligence claims is denied.

Citing statutory immunity, Lovington Defendants moved to dismiss Plaintiffs' claims for negligence brought under the New Mexico Tort Claims Act [hereinafter "TCA" or "the Act"], N.M. STAT. ANN. §§ 41-4-1 - 41-4-29 (Mitchie 1978). Plaintiffs, however, maintained their claims' viability, arguing that the TCA expressly waives Defendants' immunity for claims pertaining to negligent maintenance and operation of the WWTP. *See* N.M. STAT. ANN. § 41-4-8(A) ("Liability; public utilities.").[3]

The TCA prescribes the State of New Mexico, "local public bod[ies]" and "public employee[s']" exposure to tort claim liability. *See id.* § 41-4-3 ("Granting immunity from tort liability; authorizing exceptions."). It is undisputed that, as a "local public body" and "public employees," Lovington Defendants are subject to the TCA. *See Bybee v. City of Albuquerque*, 120 N.M. 17, 19, 896 P.2d 1164, 1166 (1995) (citing N.M. STAT. ANN. § 41-4-3(B)) ("[City of Albuquerque] is a 'governmental entity' within the meaning of the [TCA]").

The TCA mandates that "[a] governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for *any tort except as waived* by . . . Sections 41-4-5 through 41-4-12 . . ." *See* N.M. STAT. ANN. § 41-4-4 (emphasis added). Therein, § 41-4-8 provides a limited waiver of liability where public utilities are operated negligently:

---

[3]Plaintiffs also alleged that Defendants' immunity regarding their negligence claims is waived by TCA § 41-4-6. It is clear, however, that TCA § 41-4-8 - *not* § 41-4-6 - applies here. *See Bybee v. City of Albuquerque*, 120 N.M. 17, 21, 896 P.2d 1164, 1168 (1995). Simply put, Plaintiffs' Complaint alleged injuries and property damage, which occurred on Plaintiffs' property - *not* property owned by the City of Lovington. *See id.* at 21, 896 P.2d at 1168 ("Because the accident occurred *in a public park* we now consider whether [TCA §] 41-4-6 applies.") (emphasis added).

4

> . . . liability for damages resulting from bodily injury, wrongful death or property damage caused by the *negligence* of public employees while acting within the scope of their duties in the *operation* of the following public utilities and services: . . . solid or *liquid waste collection or disposal* . . .

*See id.* § 41-4-8(A) ("Liability; public utilities") (emphasis added). The New Mexico Water Quality Act, N.M. STAT. ANN. §§ 74-6-1 - 74-6-17 (Mitchie 1978), defines "waste" to include "sewage, industrial wastes or any other liquid, gaseous or solid substance which may pollute any waters of the state." N.M. STAT. ANN. § 74-6-2-(C); *see also Bybee,* 120 N.M. at 19, 896 P.2d at 1166 (citing N.M. STAT. ANN. § 74-6-2-(C) in construing the meaning of N.M. STAT. ANN. § 41-4-8)).

The TCA's waiver of immunity for claims arising out of the operation of public utilities is, however, expressly limited. Notably, TCA § 41-4-8(B)(2) states that:

> [t]he liability imposed pursuant to Subsection A of this section *shall not include* liability for damages resulting from bodily injury, wrongful death or property damage . . . arising out of the *discharge, dispersal, release or escape* of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water.

*See* N.M. STAT. ANN. § 41-4-8(B)(2) (emphasis added). Hence, whether Plaintiffs' negligence claims fall within the § 41-4-8(B)(2) exception is the crux of the parties' dispute here.

In *Holiday Management Company v. City of Santa Fe*, the New Mexico Supreme Court concluded that TCA § 41-4-8(A) waives immunity for a government entity's negligent operation of a public sewer. *See Holiday Mgmt. Co. v. City of Santa Fe*, 94 N.M. 368, 610 P.2d 1197 (1980) (trial court erred in dismissing complaint). There, the plaintiff sued the City of Santa Fe for damages stemming from "the backup of waste from a clogged sewer," which "caused the water in the sewer to . . . spill into [plaintiff's] premises." *See id.* at 368, 610 P.2d at 1197. Presented with the "sole question" of whether the TCA "clothe[d] the [City of Santa Fe] with immunity from [] suit.," the

5

*Holiday Management* court found that TCA § 41-4-8(A) applied.  *See id.* at 368, 610 P.2d at 1197.

In so doing, the supreme court rejected the City of Santa Fe's argument that TCA § 41-4-8(B)(1) applied.  *See id.* at 368, 610 P.2d at 1197.  Section 41-4-8(B)(1) retains immunity for damages caused by "a failure to provide an *adequate supply* of gas, water, electricity or services as described in Subsection A."  N.M. STAT. ANN. § 41-4-8(B)(1) (emphasis).  The *Holiday Management* decision explained that this provision was inapplicable because:

> . . . the plaintiff's claim is that this 'adequate supply' of 'service' was negligently maintained, resulting in damages to plaintiff from that negligence.  If the City negligently maintains an adequate service facility provided by it, *that negligence has no statutory exemption from liability*.

*See Holiday Mgmt.*, 94 N.M. at 369, 610 P.2d at 1198 (emphasis added).  Thus, the *Holiday Management* court concluded that because the City of Santa Fe "negligently permitted . . . [the sewage service supplied] to escape from the conduit by which it is supplied and thereby damage private property, *such negligence is actionable* and [without] a sovereign immunity shield from liability."  *Id.* at 369, 610 P.2d at 1198 (emphasis added).  The court did not construe TCA § 41-4-8(B)(2) or otherwise address whether the alleged sewage back up at issue constituted a "discharge, dispersal, release, or escape" under TCA § 41-4-8(B)(2).

Lovington Defendants maintained that *Holiday Management* does not control here because it only considered the applicability of TCA § 41-4-8(B)(1) - and *not* TCA § 41-4-8(B)(2).  (Defs.' Br. Supp. Mot. to Dismiss at 6.)  Their position, however, is unpersuasive.

Simply put, the fact that the supreme court did not affirmatively construe TCA § 41-4-8(B)(2) in *Holiday Management*, does not suggest that it failed to consider its applicability.  Indeed, the supreme court expressly stated that it had considered "whether the provisions of the [TCA] (§§ 41-4-

1 *to* 41-4-25 . . .) clothe the [City] with immunity from the suit filed by [plaintiff]." *See Holiday Mgmt. Co.*, 94 N.M. at 368, 610 P.2d at 1197 (emphasis added). In any case, the decision is particularly compelling here: the facts considered by the *Holiday Management* court are highly analogous to those underlying Plaintiffs' negligence claims. *Compare id.* at 368, 610 P.2d at 1197 (negligent maintenance of public sewer resulted in "blockage" of lines which, in turn, caused "water in the sewer to back up and spill into petitioner's premises"), *with* (Compl. ¶92 (negligent maintenance of WWTP resulted in "blockage in the City's sewer lines" which, consequently, caused "sewage [to] back[] up into the Property").)

Lovington Defendants also contended that the New Mexico Court of Appeal's *Espander v. City of Albuquerque* decision and the New Mexico Supreme Court's *Bybee v. City of Albuquerque* decision make clear that TCA § 41-4-8(B)(2) applies and preserves their immunity to Plaintiffs' negligence claims.[4] (Defs.' Br. in Supp. Mot. to Dismiss at 4-5.) In *Espander v. City of Albuquerque*, the court of appeals considered whether the TCA waived the City of Albuquerque's immunity to negligence claims stemming from a public arroyo flooding. *See Espander v. City of Albuquerque*, 115 N.M. 341, 849 P.2d 384 (Ct. App. 1993), *overruled on other grounds*, *Bybee v. City of Albuquerque*, 120 N.M. 17, 896 P.2d 1164 (1995). In reaching the narrow, dispositive issue of whether runoff water constituted "liquid waste" within the meaning of TCA § 41-4-8(B)(2), the *Espander* court stated that: "[w]e may assume that the language 'discharge, dispersal, release or escape . . .' is sufficiently broad to encompass flooding." *Id.* at 244, 849 P.2d at 387 (quoting N.M. STAT. ANN. § 41-4-8(B)(2)).

---

[4] Defendants are, however, correct that *Espander v. City of Albuquerque* provides the most extensive consideration of TCA § 41-4-(B)(2), to date. *See Espander v. City of Albuquerque*, 115 N.M. 341, 849 P.2d 384 (Ct. App. 1993), *overruled on other grounds*, *Bybee v. City of Albuquerque*, 120 N.M. 17, 896 P.2d 1164 (1995).

Contrary to Lovington Defendants' position, however, the *Espander* court's "assumption" that TCA § 41-4-8(B)(2) covered "flooding" does not suggest, much less dictate, that the New Mexico Supreme Court would require dismissal of Plaintiffs' claims. First, *Espander* noted that "the language in paragraph (B)(2) tracks the language of a 'pollution exclusion' clause widely used in insurance contracts." *See id.* at 244, 849 P.2d at 387. Therein, the *Espander* court cited the Court of Appeals for the Third Circuit's decision in *New Castle County v. Hartford Accident & Indem. Company* favorably. *Id.* at 244, 849 P.2d at 387 (citing *New Castle County v. Hartford Accident & Indem. Co.*, 970 F.2d 1267, 1271 (3d Cir. 1992)).

In *New Castle County*, the Third Circuit construed the meaning of a standard "pollution exclusion" clause that - like TCA § 414-4-8(B)(2) - provided:

> [i]t is agreed that the insurance does not apply to bodily injury or property damage arising out of the discharge, dispersal, release or escape . . . of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants [collectively "contaminants"] into or upon land, the atmosphere or any watercourse or body of water . . .

*New Castle County*, 970 F.2d at 1271. Notably, the *New Castle County* court found that the pollution exclusion clause:

> places on the insured those certain risks whose contingencies are *within the control of the insured*, but when they are not, the risks fall on the insurer . . . the pollution exclusion and occurrence clauses read together provide insurance coverage only when the damage and the discharge were *unexpected and unintended*.

*Id.* at 1272 (emphasis added). Thus, arguably, *Espander*'s understanding of TCA § 41-4-8(B)(2) is consistent with finding that the provision is inapplicable, where, as here, Plaintiffs alleged that the back up was "*within the control*" of Lovington Defendants to the extent that several similar blockages precipitated the 2001 incident. *See id.* (emphasis added); *see generally Folz v. State*, 110 N.M. 457,

8

797 P.2d 246 (1990) (recognizing that *Holiday Management* "declin[ed] to construe waiver provisions of Tort Claims Act in a manner inconsistent with remedial purpose of common-law abrogation of sovereign immunity") (citation omitted). (*See also, e.g.*, Compl. ¶¶15, 91.)

Second, in any event, the precedential weight enjoyed by *Espander* is dubious given that the New Mexico Supreme Court overruled its holding in *Bybee*.[5] *See Bybee*, 120 N.M. at 20, 896 P.2d at 1167 ("[W]e cannot agree with and expressly overrule our holding in . . . *Espander* that water runoff and the diversion channels constitute liquid waste disposal."). That is, because *Bybee* found that water runoff is not "liquid waste" under TCA § 41-4-8, it did not have to consider the validity of *Espander*'s view of TCA § 41-4-8(B)(2)'s "dispersal, discharge, release or escape . . ." language.[6] *See id.* at 20, 896 P.2d at 1167.

Given that Plaintiffs' negligence claims are highly analogous to those claims *Hotel Management* found to fall within TCA § 41-4-8(A)'s waiver of immunity, no New Mexico appellate court has squarely construed the meaning of TCA § 41-4-8(B)(2), and that this issue comes before the Court on a FED. R. CIV. P. 12(b)(6) motion, Lovington Defendants' motion to dismiss Plaintiffs'

---

[5] Contrary to the Lovington Defendants' position, the supreme court's decision in *Bybee v. City of Albuquerque*, which held that the City of Albuquerque was immune from suit, does not control the issue before the Court. In *Bybee*, the plaintiff sued the City of Albuquerque for negligently maintaining a public park after he fell and injured himself in a concrete diversion channel. *See Bybee*, 120 N.M. at 18, 896 P.2d at 1165. The *Bybee* court considered: "whether 'liquid waste disposal' includes surface water runoff and by implication the diversion channels used to carry surface water runoff." *See id.* at 19, 896 P.2d at 1166. The *Bybee* court held that the City of Albuquerque was immune from suit because: (1) "diversion channels do not fit into the exception for sewage systems that dispose of liquid wastes" under TCA § 41-4-8(A); and (2) under TCA § 41-4-6 the City of Albuquerque is not liable for "damages occurring in its flood control diversion channel even though it would be liable for damages resulting from negligent maintenance of a public park." *See id.* at 20, 896 P.2d at 1167. Hence, *Bybee* is both factually and legally distinguishable from the instant case.

[6] Neither the *Espander* nor *Bybee* decisions addressed the *Hotel Management* court's holding, and therein, its implicit understanding that TCA § 41-4-8(B)(2) did not apply to safeguard the City of Santa Fe's immunity where they alleged that negligent maintenance of the public sewer caused a sewage back up. *See id.* at 20, 896 P.2d at 1167 (no discussion of, or citation to, *Hotel Management*); *Espander*, 115 N.M. at 341, 849 P.2d at 384 (same). To be clear, however, *Hotel Management* remains good law.

negligence claims is denied.[7]

### B. Motion to dismiss Plaintiffs' remaining tort claims is granted.

Plaintiffs asserted, in addition to their negligence claims, a number of other claims against Lovington Defendants sounding in tort and stylized as follows: (i) "intentional infliction of emotional distress"; (ii) "infliction of physical injuries and illness to Plaintiffs"; (iii) "ultrahazardous activity"; (iv) "strict liability"; and (v) "civil conspiracy." (Compl. ¶¶ *passim*.)

Clearly, it is "the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the [TCA] and in accordance with the principles established in that act." *See* N.M. STAT. ANN. § 41-4-2(A). Governmental entities and public employees "acting within the scope of duty are *granted immunity from liability for any tort* except as waived by . . . [TCA §§] 41-4-5 through 41-4-12." *See id*. § 41-4-4(A) (emphasis added). Hence, the TCA "delimits the scope of liability for government entities and their employees by: (1) *retaining immunity for torts not waived by the TCA*; and (2) waiving immunity and recognizing liability, subject to certain protections, for employees acting within their scope of duty." *Celaya v. Hall*, 2004-NMSC-005, ¶8, 135 N.M. 115, 118, 85 P.3d 239, 242 (2004) (citations omitted) (emphasis added).

---

[7]Plaintiffs' claim styled "negligence per se" merely asserted an alternative theory of recovery in negligence. (Compl. ¶¶168-73.) New Mexico courts have permitted such claims to go forward under the TCA. *See, e.g.*, *McElhannon v. Ford*, 134 N.M. 124, 73 P.3d 827 (Ct. App. 2003) ("We apply the following test for determining whether a defendant may be held liable under a negligence-per-se *theory* . . .") (emphasis added). Accordingly, because Lovington Defendants' immunity is waived by TCA § 41-4-8(B)(1) for claims sounding in negligence, Plaintiffs' "negligence per se" claim also survives the FED. R. CIV. P. 12(b)(6) motion. *Accord Pollock v. State Highway & Transp. Dept.*, 1999-NMCA-083, ¶7, 127 N.M. 521, 524, 984 P.2d 768, 771 (Ct. App. 1999) (defendant's immunity waived by TCA § 41-4-11 ["Liability; highways and streets"] where negligence claim was premised on defendant's "*statutory and common law* duties to the public at large concerning the maintenance of its highways") (citing N.M. STAT. ANN. § 66-7-102(A) (Mitchie 1978)) (emphasis added); *Schear v. Bd. of County Comm'rs of Bernalillo County*, 101 N.M. 671, 677, 687 P.2d 728, 734 (1984) (defendant's immunity waived by TCA § 41-4-12 ["Liability; law enforcement officers"] where negligence claim was premised on defendant's alleged "duty to investigate, imposed by [N.M. STAT. ANN. §] 29-1-1 . . .").

Contrary to Plaintiffs' position, the TCA provides no waiver of immunity for tort claims sounding in intentional tort,[8] strict liability,[9] public nuisance,[10] private nuisance or civil conspiracy.[11] *See* N.M. STAT. ANN. §§ 41-4-5 - 41-4-12. *Accord Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dept.*, 121 N.M. 646, 652, 916 P.2d 1313, 1319 (1996) (intentional torts: "the [TCA] waives

---

[8] Plaintiffs' position that TCA § 41-4-17 waives Lovington Defendants' immunity for "intentional infliction of emotional distress" claims is incorrect. (*See* Pls.' Br. Supp. of Pls.' Resp. to Mot. to Dismiss at 6-7.) First, it is clear that governmental entities and public employees "acting within the scope of duty are granted immunity from liability for any tort except as waived by . . . [TCA §§] *41-4-5 through 41-4-12*." N.M. STAT. ANN. § 41-4-4(A) (emphasis added). Second, TCA § 41-4-17 provides, in applicable part, that the TCA "shall be the exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived under the [TCA] . . ." *See id.* § 41-4-17 ("Exclusiveness of remedy."). Plaintiffs' confusion apparently stems from TCA § 41-4-17's language outlining that a "governmental entity . . . shall have no right to contribution, indemnity or subrogation against a public employee *unless the public employee* . . . acted . . . with actual *intentional* malice causing the bodily injury . . . [or] property damage . . ." *Id.* (emphasis added). This language simply limits government entity's responsibility to *indemnify* public employees found to have acted with intentional malice; no waiver of *immunity* is set forth in TCA § 41-4-17. *See id.*

[9] To be clear, Plaintiffs' claim styled as "ultrahazardous activity" sounds in tort. (Compl. ¶¶156-59 (alleging that "each Defendant engaged in the ultrahazardous activity of disposing of toxic substances" and that they are "strictly and wholly liable" for Plaintiffs' damages under N.M. STAT. ANN. § 41-3A-1).) As such, the TCA governs, and because - as explained *infra* - the Act contains no waiver for "ultrahazardous" claims, Lovington Defendants' immunity is retained. In any event, N.M. STAT. ANN. § 41-3A-1 expressly states that it creates no private right of action: "[n]othing in this section creates or recognizes, either explicitly or impliedly, *any new or different cause of action* not otherwise recognized by law. . ." N.M. STAT. ANN. § 41-3A-1(G) (emphasis added).

[10] Despite their citation to N.M. STAT. ANN. § 30-8-1, which defines "public nuisance" and provides that it constitutes a "petty misdemeanor," Plaintiffs did not contend that their claim is brought pursuant to N.M. STAT. ANN. § 30-8-8 ("Abatement of public nuisance"). Section 30-8-8 provides that:
> "[a] civil action to abate a public nuisance may be brought, by *verified complaint in the name of the state* without cost, by any public officer or private citizen, in the district court of the county where the public nuisance exists, against any person, corporation or association of persons who shall create, perform or maintain a public nuisance.

N.M. STAT. ANN. § 30-8-8 (Mitchie 1978) (emphasis added).

[11] It is well-established that "civil conspiracy is not in itself a cause of action" and, therefore, that it "must be accompanied by a civil action against one of the conspirators." *Valles v. Silverman*, 2004-NMCA-019, 135 N.M. 91, 84 P.3d 1056 (Ct. App. 2004). Notwithstanding civil conspiracy's parasitic nature, New Mexico courts have recognized that a claim for civil conspiracy sounds in tort. *E.g. id.*, 135 N.M. at 91, 84 P.3d at 1056 (recognizing that the "function of a [civil] conspiracy claim is to extend *liability in tort* beyond the active wrongdoer to those who have merely planned, assisted or encouraged the wrongdoer's acts") (citation omitted). Accordingly, absent express waiver, the TCA cloaks Lovington Defendants with immunity from Plaintiffs' civil conspiracy claim. *See* N.M. STAT. ANN. § 41-4-4.

governmental immunity for claims of liability 'resulting from assault, battery, false imprisonment, false arrest, malicious prosecution . . . violation of property rights . . . when caused by *law enforcement officers . . . .*'") (quoting N.M. STAT. ANN. § 41-4-12) (emphasis added); *Silva v. Town of Springer*, 121 N.M. 428, 434, 912 P.2d 304, 310 (Ct. App. 1996), *cert. denied*, 121 N.M. 444, 913 P.2d 251 (1996) (intentional torts: affirming dismissal of "prima facie tort" and "intentional infliction of emotional distress" under the TCA); *Saiz v. Belen School Dist.*, 113 N.M. 387, 402, 827 P.2d 102, 117 (1992) (strict liability: "[t]he [TCA] in no way imposes a strict liability for injuries upon governmental entities or public employees."). *See also Valles v. Silverman*, 2004-NMCA-019, 135 N.M. 91, 84 P.3d 1056 (Ct. App. 2004) (civil conspiracy: recognizing that, while "[c]ivil conspiracy is not in itself a cause of action," the "'function of a [civil] conspiracy claim is to extend *liability in tort* beyond the active wrongdoer to those who have merely planned, assisted or encouraged the wrongdoer's acts'") (quoting *Adcock v. Brakegate, Ltd.*, 164 Ill.2d 54, 645 N.E.2d 888, 894 (1994)) (emphasis added). Accordingly, these claims will be dismissed because they do not fall "within a recognized exception to the immunity granted [Lovington Defendants] . . . under the [TCA]." *See Silva*, 121 N.M. at 434, 912 P.2d at 310.

      **C.**      **Motion to dismiss Plaintiffs' federal environmental claims is granted, with limited leave to replead CERCLA claim.**

Lovington Defendants' moved to dismiss all federal statutory claims set forth in the Complaint. Plaintiffs alleged that the Lovington Defendants violated four federal environmental statutes: (1) the Resource Conservation and Recovery Act; (2) the Clean Water Act; (3) the Safe Water Drinking Act; and (4) the Comprehensive Environmental Response, Compensation, and Liability Act. Notably, Plaintiffs' Response failed to defend, or indeed address in any regard, the

issues raised by Lovington Defendants in their FED. R. CIV. P. 12(b)(6) motion.  (Pls.' Br. Supp. of Pls.' Resp. to Mot. to Dismiss.)

### 1. RCRA claim is dismissed with prejudice.

Plaintiffs alleged that Lovington Defendants violated the Resource Conservation and Recovery Act [hereinafter "RCRA"], 42 U.S.C.A. §§ 6901-6992 (1984).  Because the Complaint failed to state an actionable claim under RCRA, however, it will be dismissed with prejudice.

In enacting RCRA, Congress "established a 'cradle-to-grave' regulatory structure for the treatment, storage and disposal of *solid* and hazardous wastes."  *See Conn. Coastal Fishermen's Ass'n v. Remington Arms Co., Inc.*, 989 F.2d 1305, 1313 (2d Cir. 1993) (emphasis added).  Notably, however, waste placed in public sewage systems is statutorily excluded from RCRA's definition of "solid waste."  *See United States v. Dee*, 912 F.2d 741, 748 (4th Cir. 1990) (RCRA "solid waste," by definition, "excludes mixtures of domestic sewage and other wastes which go to a 'publicly-owned treatment works'") (citation omitted); *see also* 42 U.S.C. § 6903(27) ("solid waste" includes, *inter alia*, "any garbage, refuse, sludge from a waste treatment plant . . . *but does not include* solid or dissolved material in *domestic sewage*") (emphasis added).  Given that municipal sewage is not subject to RCRA regulation, Plaintiffs cannot invoke RCRA's citizen suit provision against Lovington Defendants in their operation of the WWTP.  *See Comite Pro Rescate De La Salud v. Puerto Rico Aqueduct & Sewer Auth.*, 888 F.2d 180, 184 (1st Cir. 1989).

In any event, relief available under RCRA's citizen suit provision is limited to "injunctive relief, civil penalties, and attorney fees."  *See Ailor v. City of Maynardville*, 368 F.3d 587, 601 (6th Cir. 2004).  As discussed *infra* Part II.C.2., the Complaint sought only compensatory damages.  (Compl. ¶146.)  Plaintiffs' RCRA claim will, therefore, be dismissed.

### 2. Clean Water Act claim is dismissed with prejudice.

Plaintiffs alleged Defendants violated the Clean Water Act [hereinafter "CWA"]. Defendants argued that Plaintiffs failed to: (1) adequately specify the nature of Lovington Defendants' alleged CWA violations; and, in any event (2) demonstrate their compliance with the conditions precedent as required to maintain a citizen suit. *See* 33 U.S.C. § 1365 (1987).

Plaintiffs merely set forth cites to various CWA provisions without specifying the nature of Defendants' alleged violations or indicating that they complied with the stringent notice provisions as required. (*See* Compl. ¶¶145-50). Indeed, the CWA sections cited do not provide grounds for an actionable claim. (Compl. ¶145 (citing 33 U.S.C. §§ 1281(a), 1294-1297 (1987)).) Furthermore, while the Complaint alleged that the "violations of these federal statutes and the regulations promulgated there under [sic] represent a past and ongoing public health hazard," Plaintiffs did not pray for injunctive relief. (Compl. ¶146.) Plaintiffs only sought monetary damages. *See Ailor*, 368 F.3d at 601 (CWA citizen suit "does not provide for compensatory damages.").

Courts have long-recognized that the "legal interests that can be raised by private attorneys general are narrow." *Atl. States Legal Found., Inc. v. Eastman Kodak Co.*, 933 F.2d 124, 127 (2d Cir. 1991) (citing *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 58-59 (1987)). Indeed, the "Supreme Court has held that a citizen suit under the Act may neither be addressed wholly to past violations nor seek to recover fines and penalties that the government has elected to forego." *Id.* CWA's citizen suit does not permit damage awards to prevailing plaintiffs and, additionally, mandates that plaintiffs comply with numerous notice provisions before maintaining a CWA suit. *See* 33 U.S.C. § 1365 (1987); *see also Gwaltney of Smithfield*, 484 U.S. at 61 ("Members of Congress frequently characterized the citizen suit provisions as 'abatement' provisions

or as injunctive measures.").

Undoubtedly, all positive inferences must be given to Plaintiffs under a FED. R. CIV. P. 12(b)(6) motion. Therein, the "Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." *Conley v. Wilson*, 355 U.S. 41, 45 (1957). At the same time, however, the courts clearly require Plaintiffs to set forth a "'short and plain statement of the claim' that will give the defendant *fair notice of what the plaintiff's claim is and the grounds upon which it rests*." *Id.* (quoting FED. R. CIV. P. 8(2)(A)) (emphasis added).

Plaintiffs' Complaint accordingly fails to state an actionable claim under the CWA. Unlike their CERCLA claim, whose pleading defects appear to be readily rectifiable, *see* discuss *infra* Part II.C.4., Plaintiffs failed to provide any indication that they can maintain a CWA citizen suit. *See* FED. R. CIV. P. 12(b)(6). Accordingly, Plaintiffs' CWA claim is dismissed with prejudice.

### 3.     Safe Drinking Water Act claim is dismissed with prejudice.

Plaintiffs alleged that Defendants violated the Safe Drinking Water Act [hereinafter "SDWA"]. *See* 42 U.S.C. § 300j-9 (1994). Plaintiffs, however, neither specified the precise nature of their SDWA claim nor referred to any particular section of the statute. (Compl. ¶145 ("42 U.S.C. Section 300 *et seq.*").) Moreover, like their CWA claim, *see supra* Part II.C.2., Plaintiffs failed to indicate that they complied with any of the preliminary procedural requirements, which are essential to a well-pled SDWA citizen suit. *See* 42 U.S.C. § 300j-8 (1996); 40 C.F.R. § 135.12(a) (2005) (prior notice constitutes a precondition of asserting a viable SDWA claim: notice must provide "sufficient information to permit the recipient to identify the specific requirement alleged to have been violated . . .'"). Consequently, Plaintiffs' SDWA claim is dismissed with prejudice. *See* FED. R. CIV. P. 12(b)(6).

15

### 4. Comprehensive Environmental Response, Compensation and Liability Act claim is dismissed, with leave to cure pleading defect.

Plaintiffs averred that Lovington Defendants violated the Comprehensive Environmental Response, Compensation, and Liability Act [hereinafter CERCLA] § 107, 42 U.S.C. § 9607 (2002). CERCLA § 107 provides private parties a cause of action to seek "reimburs[ement] for all or some of the costs already incurred in response to contamination" and to obtain a "declaratory judgment award dividing future response costs among responsible parties." *See Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 91-92 (2d Cir. 2000) (per curiam).

The Court of Appeals for the Tenth Circuit has made clear that "a prima facie case under [CERCLA] § 107(a)" requires that a plaintiff prove:

> (1) the site is a facility, (2) defendant is a responsible person, (3) the release or threatened release of a hazardous substance has occurred, and (4) the release or threatened release caused the plaintiff to incur necessary response costs consistent with the National Contingency Plan (N.P.).

*Young v. United States*, 394 F.3d 858, 862 (10th Cir. 2005). CERCLA defines "facility"as including "any . . . pipe or pipeline (including any pipe into a sewer or publicly owned treatment works) . . ." 42 U.S.C. § 9601(9) (2002). Moreover, CERCLA makes clear that a local government may be a "responsible person" in the "same manner and to the same extent, both procedurally and substantively, as any nongovernmental entity, including liability under section 9607 of this title." *See id.* § 9601(20)(a).

Here, it appears Lovington Defendants may be subject to CERCLA cost-recovery liability. That is, the Complaint alleged that Defendants operated the WWTP and its connecting sewage pipelines. (*See* Compl. ¶¶10, 13, 92.) The Complaint also averred, *inter alia*, that prior to the underlying sewage back-up on their property in 2001, "industrial cleaners" that "are often federally

labeled as hazardous" were being discharged into the City of Lovington's sewer system. (Compl. ¶30.) Finally, Plaintiffs alleged that in mid-2001 "sewage backed up into the Property causing raw sewage" to be released into their residence. (Compl. ¶¶ 91-92.)

Nevertheless, the Complaint failed to aver a prima facie CERCLA claim. Even giving Plaintiffs all positive inferences, the Complaint did not - in any regard - aver that the clean-up costs they incurred are "consistent with the National Contingency Plan." *See Young*, 394 F.3d at 862. As noted *supra*, the Tenth Circuit is clear that such allegations are necessary to pleading a prima facie CERCLA claim. *See Morrison Enters. v. McShares, Inc.*, 302 F.3d 1127, 1135-36 (10th Cir. 2002) ("[t]he burden [is] on a private party to show compliance with the NCP in order to make out its prima facie case under § 9607(a)"). Thus, Plaintiffs' CERCLA action cannot survive Lovington Defendants' motion to dismiss. *See* FED. R. CIV. P. 12(b)(6).

The Court recognizes, however, that the pleading defect would be cured if Plaintiffs averred that their clean-up costs "substantially comply" with the NCP. *See* 40 C.F.R. § 300.700(c)(3)(i) (2005); *cf. Morrison Enters. v. McShares, Inc.*, 302 F.3d at 1136 (noting that, for summary judgement purposes, evidencing requisite compliance with the NCP is "ordinarily not an easy one" for "private litigants"). Accordingly, because the Court finds that it would not unduly surprise or otherwise prejudice Lovington Defendants, and that it would be consistent with the spirit of the Federal Rules, Plaintiffs are granted ten days to replead their CERCLA claim. *See* 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. Supp. 2005) ("the court has *considerable leeway* under the liberal pleading standards of the federal rules in deciding when a complaint is formally insufficient and whether *to permit leave to replead*") (emphasis added). *See generally United States v. Ohiri*, No. 03-2239, 133 Fed. Appx. 555, 559

(10th Cir. June 7, 2005) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.").

**III.     Conclusion.**

For the foregoing reasons, Lovington Defendants' motion to dismiss is **denied** as to Plaintiffs' negligence claims. As to all remaining claims against Lovington Defendants contained in the Complaint, the FED. R. CIV. P. 12(b)(6) motion is **granted**, with a single exception: Plaintiffs are permitted ten days to replead their CERCLA claim.

**IT IS SO ORDERED**.

*/s/ Robert Brack*

_____
**ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE**